Our second case today, agenda number two, is 126461 and 126932, a consolidated case, and that's People of the State of Illinois v. Tory Moore et al. Counsel for the appellant, are you prepared to proceed? Please state your name. Good morning, Your Honors. Counsel. Lauren Bowser from the State Appellate Defender, on behalf of Petitioner Tory Moore. My colleague, Sean Conley, also from the State Appellate Defender, represents Mr. Williams, and he will be arguing a rebuttal. Your Honors took Mr. Moore's PLA and took the State's PLA in Mr. Williams' case and consolidated these cases. The common question in these consolidated cases is whether the petitioners sufficiently made a prima facie showing of cause and prejudice to allow them to file successive post-conviction petitions, raising as applied constitutional challenges to their sentences for crimes they committed at age 19. Now, to be clear, petitioners are not merely claiming that their relative youth was insufficiently considered at their sentencing hearings. Rather, the petitioners are making a claim based specifically on Miller v. Alabama and the science, the new brain science in that decision, on which that decision rested, and that formed the basis for the court's decision in that case. These as-applied challenges, each petitioner is arguing that his individual brain development and the circumstances show that his brain was so like that of a juvenile that the reasoning behind Miller applies with equal force to his case, and thus he is entitled to the protections of Miller. At the leave-to-file stage, a pro se petitioner is not required to prove the claim. Rather, he need only make the prima facie showing. And at the pleading stage, we consider factual allegations not positively rebutted by the record as true. So under that lenient standard, the petitioners have established cause and prejudice to bring their claims in a successive petition. With respect to cause, the legal and factual basis on which the petitioners' current claims rely did not exist at the time of their sentencing hearing or at the time they filed their initial petitions. With respect to prejudice, Mr. Moore invoked Miller v. Alabama in his petition, made a factual allegation that his brain development was like that of a juvenile, and the record demonstrates that his sentencing hearing is not what we would now call a Miller-compliant hearing. The court didn't consider youth through the lens of Miller. With respect to Mr. Williams, he also invoked Miller v. Alabama, cited to this court's recent precedent, and discussed changes in the law of juvenile and youth sentencing, and actually tied those specific circumstances on brain development to the facts of his individual case. Therefore, because both petitioners have met the showing at the pleading stage to bring these claims in a successive petition, I respectfully ask that this court reverse the appellate court's decision in Mr. Moore's case, affirm the appellate court's decision in Mr. Williams' case, and remand both cases for second-stage proceedings, including the appointment of counsel. Counsel, the State files some supplemental authority. People v. Clark, how would you distinguish that case from these two cases? Well, there's two important distinctions. First, obviously, like these two cases, Clark wasn't as-applied challenged. So we do have to look at the individual facts and circumstances of each case and the claims that issue in each case. But this court in Clark acknowledged that it had previously identified a potential as-applied challenge for 19-year-olds arguing that their brains were functionally like that of a juvenile. In Clark, the 24-year-old defendant there was not arguing that his brain was functionally like that of a juvenile. Really, he was arguing that this court should reconsider, you know, his sentencing hearing in light of current standards. There's no evidence in Clark that the petitioner there had presented new science suggesting that 24-year-old brains are more like a juvenile. There was nothing in that record where he was able to show that evolving standards of societal decency via this court's decisions or legislative enactments show that our society is now more tolerant of a 24-year-old who has a permanent disability. And I would point out that his argument while he invoked Miller and said this is a Miller claim, it really wasn't. He was arguing that, you know, his permanent disabilities as a result of fetal alcohol syndrome should be reconsidered. And this court correctly pointed out that he had raised that claim before. He raised it several times and was asking for it to be revisited. He wasn't actually presenting any new evidence with regard to either society's evolving standards or any new science or evidence that would actually suggest he was more amenable to rehabilitation than previously understood. Your client received a discretionary sentence. Is that correct? He did. Does that matter? It doesn't matter at this stage because the state hasn't contested the fact that the court didn't consider his sentence through what we now know, the lens of Miller. So if, in fact, he can, after an evidentiary hearing, make the showing that his brain was functionally like that of a juvenile, he would have been entitled to Miller protections, which we know didn't happen here. So it's not a discretionary sentence in the fact that the court didn't exercise the discretion required by Miller before imposing the life sentence. My question is a follow-up. I just want to be real, real precise. You say in your brief that this claim is Miller animated. I'm not quite sure I know what that means. What is your claim, specifically, to be clear? Is this a claim under the United States Constitution, Eighth Amendment, and then separately the Illinois Constitution proportional penalties provision? Are these two separate claims? Two separate claims. Okay. In terms of the first claim, the Eighth Amendment claim, is this a Miller claim or is it not? It's a Miller. It's an as-applied Miller challenge. How could it be a Miller claim where we know, where the United States Supreme Court has spoken about Miller, how it's evolved after Jones, where there's an issue in terms of the Eighth Amendment and those cases, the Miller line of cases only apply to mandatory sentences, only apply to people under 18. How is this a Miller claim? Well, we're not arguing that it's a direct application of Miller. So it's not a Miller claim? Sorry. Sorry. It's not a direct Miller claim. No. We are arguing that... So we're not talking about Miller at all. We're talking about the Eighth Amendment. Is that right? Right. We're talking about a constitutional challenge that, based on our evolving standards of decency, these two particular petitioners can show that their brain development was like that of a juvenile, that under either the Eighth Amendment or the proportional penalties clause, it's disproportionate to sentence them without treating them with the same, giving them the same protections as Miller. And I'd point out that this Court... Cruel and unusual punishment over here, proportional penalties over here, correct? That's what we're arguing. Right. That's what we're arguing. We're arguing those two things, right? No. No. We're not saying this is a Miller claim directly application. This claim is essentially the claim that this Court recognized was viable in its decisions in Thompson, Harris, and House. It's a claim that the brain science that Miller relied on, we now have evidence that it goes beyond... You know, it applies to people who are the age of the petitioners. And this Court has said that a petitioner can make that sort of claim if he can show that he has the unique cognitive and developmental characteristics of a juvenile. And in House and Harris, this Court suggested that an evidentiary hearing may be necessary to do that, because this is an area that's complex. It involves an intersection of, you know, complex areas of law, neuroscience, biology. So in order to make that showing, this Court suggested an evidentiary hearing is necessary. So based on that, by invoking Miller, arguing that their brains are functionally equivalent to that of a juvenile, petitioners should be allowed leave to bring these claims in the circuit court and make that showing after an evidentiary hearing, as this Court has envisioned. Well, doesn't the issue here cause and prevents? But let's start with cause. The argument is made is, again, that's what I was trying to hear you say. An Eighth Amendment claim, that's been out here for a lot of law out there for a long time. Proportional penalties, a lot of law out there for a long time. Why was there cause for these claims not to be made earlier? There's two reasons why there's cause here. The first is that there are three new things here that petitioners now have that they didn't have at the time of the filing of their initial petitions. The understanding that Miller actually suggests that life sentences for youth may have a constitutional dynamic rather than just an excessive sentencing dynamic. They have evidence of the new science that didn't exist in 2001 and 2006 when they filed their initial petitions. And now they have decisions from this Court recognizing that this could possibly apply in legislative enactments, extending youth sentences, youth sentencing concerns to those under 21. So those are all new facts that weren't available to them at the time of the original petition. The second thing I would just point out is that a claim, the question of what a claim is, is more complex than just what constitutional provision we're citing to. There are factual and legal bases that are new here for this claim. This Court's recent decision on cause of People v. Blaylock is helpful. There the petitioner sought to raise a police coercion claim in a successive petition. And this Court rejected an argument similar to the one the State makes here that because he always knew he was tortured and because the legal framework for a police coercion claim always existed, there was not cause for him to raise it in a successive petition. But this Court found that he had new evidence of pattern and practice of the officers in his case. And that established cause for him to bring the claim in a successive petition, notwithstanding the fact that, of course, the legal framework existed at the time when he filed his initial petition. And that's the same thing we have here. Just because the legal framework for a proportionate penalties clause claim has always existed, the petitioners didn't have evidence of society's evolving understanding of youth sentencing at the time. They didn't have this Court's decisions to point to or legislative enactments that have expanded youth sentencing at the time they filed initial petitions. Those are both part of the factual basis for a proportionate penalties clause claim. So that gives them cause, much like Blalock, to bring their claims in a successive petition. Let's see. Unless your honors have any questions. Thanks, everybody. Thank you. May it please the Court. I am Assistant Attorney General Gopi Kashyap on behalf of the people of the state of Illinois. I'd like to turn directly to the Court's decision in Clark, which we believe is dispositive of the question presented here as to cause. The question of cause is whether there's an objective factor that impeded the petitioners' ability to raise their claims in a prior proceeding. As Chief Justice Tice pointed out, there are two claims here that it appears petitioners are attempting to raise, an Eighth Amendment claim and a proportionate penalties clause claim. Both of these claims are as-applied claims. They're not raising a categorical Eighth Amendment claim under Miller, as counsel just stated, nor could they. Miller only applies to juvenile homicide offenders. They are not juveniles, so that categorical rule does not apply to them. So turning to the two claims, the as-applied Eighth Amendment and the as-applied proportionate penalties clause claim. In Clark and Dorsey, this Court already held that a juvenile homicide offender who was 14 years old did not have cause to raise a proportionate penalties clause claim under Miller because the facts underlying his claim that youth matters at sentencing has been established in Illinois law for over a century. In Clark, the Court applied Dorsey and reached the same conclusion as to a 24-year-old. I would note that in Clark, the Court separately analyzed the intellectual disability component from the youthful offender component. It was very careful to separate them and conduct distinct analyses of them. And the rationale in Clark was the same as the rationale in Dorsey, and that is that in the laws of nature, we have known since 1894 that minors are different than people of a mature age. And Bradley, which the Court cited in Clark and which the Court has referred to throughout its decisions, the Court defined minors as persons 16 to 22 years old. That was in 1894. And this Court relied on that provision of Bradley, which stated there is a marked distinction between these two groups, 16 to 22-year-olds and those older who are mature. And the Court explained that the character and habits of those that are minors, 16 to 22-year-olds, are presumably and to a large extent not yet formed or settled. That is the same fact upon which petitioner's claims rely. They are claiming that they are 19, and their brains or their characters, their habits were not fully formed or settled. But, of course, that was known in 1894, and it's been known throughout our history. This is the proposition upon which this Court relied in Clark in reaching the same conclusion, that there is no cause based on Miller to raise proportionate penalties clause claim. The same reasoning applies to an as-applied Eighth Amendment claim. As Chief Justice Dice pointed out, the standards were established. And as we argue in our brief, even our nation has recognized throughout its history that persons under the age of 21 are still developing. So this fact upon which they rely, for which science merely provides further support, as the Court said in Dorsey and again in Clark, is not new evidence that would entitle them to satisfy the cause standard. And that is because this evidence did not prevent them from raising the claim. I'd like to distinguish Blaylock very quickly, where in Blaylock the pattern and practice evidence at issue, the Court stated was a part of the factual basis of the claim. That was the holding of Blaylock. This Court was well aware of Blaylock when it reached the same question in Clark. Blaylock had been decided about five months prior to this Court's decision in Clark, which was issued just last month. And the Court drew the distinction because in this case the fact of youth and its mitigating effect and its significance under the Portion Penalties Clause and under the Eighth Amendment has been long established. Returning to Clark, the Court not only cited Bradley, but then it went on and it cited a number of cases. And they were not persons who were 24 years old. The Court referenced cases in which the offenders were younger. In four of the cases that the Court cited, in Haynes, LaPointe, Henderson, and Adams, the offenders were 18 years old. In a fifth case, Maldonado, the offender was 20 years old. And in the last case, the offender in center was 23 years old. So what we have here is a situation where the Court has held that persons who are 14 cannot use Miller as cause to raise the Portion Penalties Clause claim. Persons who are 24 cannot use Miller as cause. Persons who are 18, as referenced in the Court's decision, cannot. 20, 23. These petitioners were 19. The same reasoning applies to them, and the same conclusion should result. Is Williams different because he was actually subject to a mandatory sentence, even though the trial court thought it was discretionary? So we don't think for this case there is a distinction. The trial court's decision rested on a mistake of law. The trial court specifically thought it had discretion. And as the Court framed it in Dorsey, where the trial court issues a discretionary life sentence, the situation is different because the trial court is looking at the specific facts and circumstances of the individual offender. The trial court believes it has discretion and does consider the fact of youth and its rehabilitative potential. And in here we would note that the Court expressly found that Williams did not have rehabilitative potential, and it considered all of the facts in doing so. That brings me to actually one component of my opponent's argument, which is that, you know, what the nature of the Miller rule is. There is a sort of premise built in that for juvenile offenders who are sentenced to discretionary sentences, that Miller requires something more than what Jones v. Mississippi said it does. And what Jones said was that Miller just doesn't apply to discretionary sentences. And so for juveniles under our Constitution or under the Eighth Amendment, discretionary sentences are permissible. And so long as the trial court has the discretion or exercises that discretion in sentencing the offender, that is sufficient under the Eighth Amendment. And for an as-applied proportionate penalties clause claim, we would look at the record and determine whether the trial court properly exercised its discretion and considered the objectives of the penalties provision. But, Justice O'Brien, to the extent the Court believes it was a mandatory sentence, the cause analysis doesn't really change because the proportionate penalties clause looks at the outcome, the outcome of the sentence, so the actual sentence, and it looks at whether that sentence is proportionate to the offender. And youthful offenders in Illinois have brought proportionate penalties clause challenges to their mandatory sentences. Leon Miller was successful in doing so around the same time. But other offenders were bringing them around the same time. And the cause analysis doesn't depend on whether a claim will prevail. It depends on whether the legal tools were available to make the claim. And here the legal tools were available. And so petitioners could have raised both of their claims, their Eighth Amendment and their proportionate penalties clause claims, on direct appeal, at their sentencing hearing. Leon Miller actually did it at the time of sentencing. And so in the end, you know, stepping back a little on the cause from a broader perspective, petitioners are trying to create some claim that has not been recognized by this Court. They rely on Thompson and Harris and House, but the Court did not reach the merits of any of those claims. In each of those cases, the Court disposed of the claims on procedural grounds. In Thompson, it was because it was raised for the first time on appeal, and the Court noted the Post-Conviction Hearing Act is typically the vehicle in which you can raise these sorts of claims. I would note specifically in Thompson, the Court pointed defendants to the Post-Conviction Hearing Act, and specifically to Davis. And it had a parenthetical that said, see, Davis detailing the framework of the Post-Conviction Hearing Act. And those paragraphs in Davis that this Court cited discuss the immense procedural hurdles that exist to presenting successive – to filing successive post-conviction petitions. So the Court did not say that evidentiary hearings are required. The Court did not comment that an offender like Thompson could satisfy the cause in Pritchett's test. The Court merely stated that the proper vehicle would be to invoke the Post-Conviction Hearing Act, and then we would look at the claim. And the Court, since these PLAs were filed, has twice decided that a petitioner cannot satisfy cause for a penalties provision claim. Harris is the same. It was a direct appeal case where the Harris did not raise the claim in the trial court and raised it for the first time on appeal. And the Court, again, pointed the defendant to the Post-Conviction Hearing Act. And in house, the circumstances were very unique because it was the second house decision that had granted relief to the petitioner in the face of a supervisory order from this Court directing the Court to reconsider. Ultimately, what the Court – the majority of the Court did was say, no, Harris does not permit an appellate court to grant relief on such a claim. And the parties had agreed for a remand for further proceedings, and so the Court adopted that remedy. I would note the three justices dissented from that and would have rejected the claim on the merits outright. And so what we have is that there is no new rule from this Court under the penalties provision. There is no pronouncement that petitioners can immediately get to an evidentiary hearing. The Act is clear. It is the cause in Pritchett's test. This Court has held very recently that young adult defendants cannot satisfy the cause test for filing a post-conviction successive petition for a penalties provision claim. And the same analysis applies to an Eighth Amendment claim. And so petitioners cannot show cause. I can touch briefly on prejudice. We think that the petitioners cannot show prejudice given the serious nature of their crimes and the fact that the courts did consider all of their circumstances. These crimes are particularly egregious. They are cold-blooded. The trial courts found these defendants lacked rehabilitative potential. And so the objectives of the penalties provision were considered, and the sentences satisfied the provision even were the court to find that there or even if there were evidence presented that their brains were just like a 17-year-old's as they asserted. Unless the Court has any further questions, we would ask the Court to affirm the judgments of the trial courts in both cases. Thank you. Thank you very much. As I mentioned earlier, the appellant has agreed to split their time. And, Mr. Connolly, you're going to be delivering the rebuttal, correct? Thank you very much. Yes, sir. May it please the Court, counsels. My name is Sean Connolly. I'm with the Office of the State Appellate Defender, and I represent Marvin Williams. I would like to start by addressing the discretionary question and then move on to cause, including Clark. In terms of the question of discretionary sentences, first I want to point out that there are two defendants or two petitioners in this case, and that Mr. Williams did receive a mandatory life sentence. I understand that the sentencing judge in his case was under the mistaken belief that he had discretion, but he did not. And we believe that what controls is the sentence that Mr. Williams actually received, which is a mandatory life sentence. In terms of whether these claims can apply to discretionary sentences in the first place, I think that there is a widespread misunderstanding about what the Jones case means and what it held. It's axiomatic that we cannot take general language from an opinion out of context to support a rule that is broader than that, presented by the specific circumstances of that case. The Jones court took the case to decide the very specific question of whether a sentencing judge, quote, must make a separate factual finding that a defendant, and by that they're referring to a juvenile homicide defendant, is permanently incorrigible. And it answered that question by relying, quote, on what Miller and Montgomery said, that is, their explicit language addressing the precise question before us and definitively rejecting any requirement of a finding of permanent incorrigibility. End quote. That is, the only question that Jones was addressing is whether there was a requirement for a separate finding of fact. And the answer to that is no. But we can't take that finding out of context. The other questions, including the question of discretionary sentences, was not before the court in Jones. In terms of cause, what I'd like to focus on is the requirement of novelty. Our laws do not require judges or defendants to raise true or actually novel claims in order to establish cause. These claims are adjacent to existing proportionate penalties and Eighth Amendment claims. They are adjacent. They touch upon them. But they are not traditional Eighth Amendment or proportionate penalties claims. I would point out something that counsel said, saying that we are trying to create a claim not recognized by this court. Absolutely. These are new, novel claims. They could not have been raised in the late 90s because nobody who practiced in the late 90s apprehended how Miller et al. would constitutionalize specific attributes of youth and impose constitutional requirements based on those attributes. And perhaps the best evidence for that, for the notion that these are novel claims, is that no one at that time was raising them as such. And we can also look at the remedy to a Miller claim. It's not just discretion. It's that the judge, the sentencing judge, must consider these specific attributes before imposing a life sentence. And, again, that's not the claim that was being raised in the late 90s. These are new, novel claims. In terms of Clark, the PLA in Clark was taken two months before the PLA in these cases. And I understand there has been turnover on the court, but we believe that Your Honors believe that these are different claims. And we continue to believe that these are different claims. And, again, the context matters. The claims that were before Your Honors matter in terms of what the holding of Clark was. And regardless, the material facts of that case were different than the material facts in these cases. May I take a moment here? You argued that this is adjacent to Miller. Yes. That's the Eighth Amendment claim, correct? Correct. What about the proportional penalties claim? Hasn't this Court, for years and years, settled the proper analysis for a Illinois constitutional claim on proportional penalties long before the original pleadings in this case? Our position would be that this is a different claim than the claim that you're referring to, Your Honor. So it's not a proportional penalty? It's a proportional penalties claim that is based on Miller and the developments of Miller. I don't know if I understand those words. I mean, it's under the Illinois Constitution. It's under the Illinois Constitution. The United States Constitution, correct? Correct. So it stands on its own, the Illinois Constitution. Correct. Proportional penalties, and years and years of cases interpreting what our constitutional provision means, correct? Correct. And so you're saying… We're saying… Illinois constitutional proportional penalties claim? We're saying that it's not quite a traditional Illinois proportionate penalties claim, that this is a new type of claim with new elements that doesn't fit into the framework of the traditional proportionate penalties claim. And that's why, again, it hasn't been raised the same way. This is not even the same claim that Leon Miller raised. Okay? Because, again, no one at that time apprehended the constitutional significance of these specific attributes of youth and how they limited the power of judges to impose life sentences. There's very powerful language in Leon Miller, including language about youth. Correct. This is this hard-working case, shocking the conscience that the lookout, the 15-year-old lookout, would be charged with felony murder and then have this mandatory life sentence. I mean, but certainly in the language of Miller, Leon Miller, there's language about his age. I would agree with that. However, again, the legal landscape, the social landscape, our social mores as a people have developed since that time. And these claims are based on those changes. And so this is not the same as… And, again, that's why I refer to these claims as adjacent, because, yes, they raise the question of age. And the question of age has been raised for a long time. But that doesn't mean that we're raising mere age. It doesn't mean that we're raising it through the same lens that Leon Miller did. It is a different claim. What's different about it? What's different about it is, again, all of those developments that were identified in Miller and in Montgomery have cast this question in a different lens and has required a different analysis. There's different, for example… Are you saying that based on, you know, 50 years ago, yes, everyone knew that, you know, youth acted differently than adults, but that now with greater development in terms of psychological testing and understanding and the public's acceptance of the wide difference between a mature adult and a maturing young person, that now that has created a different argument under these standards and that those have changed? Is that what you're saying? That is correct, Your Honor. And one thing to consider is, again, the remedy here to a Miller claim. Because at no point until Miller have we said that a judge could not impose a life sentence without considering these specific attributes. Even Leon Miller did not make that argument. It seems that you're basically just trying to extend the age. You don't want us to just consider people, you know, teenagers, so to speak. You just want us to look at emerging adults the same way we look at teens. Is that what you're asking? That's not quite what we're asking, because, again, these are as-applied challenges. This is not a situation in which we're asking you to expand Miller to include 19-year-olds. But what we're saying is if a specific 19-year-old has the specific attributes of someone who is 16, if the only difference between those two people is the chronological age, it makes sense then to extend the protections that Miller provides to that person. If that's the only difference, as applied to that person, Miller should apply. Any other questions? Thank you, Your Honor. Thank you very much. Thank you to both counsels. This case, which is agenda number 2, number 126461, consolidated with 126932, people of the State of Illinois v. Tori Moore et al., will be taken under advisement.